UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RONALD BERNARD WASHINGTON | CIVIL ACTION NO. 08-CV-1198 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CADDO PARISH SHERIFF STEVE PRATOR, ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment [Record Document 22], filed on behalf of Defendants, Caddo Parish Sheriff Steve Prator and Leonard A. Scoggins. Defendants move for dismissal of Plaintiff's claims in their entirety. For the reasons stated herein, Defendants' Motion for Summary Judgment is **GRANTED.**

### FACTUAL BACKGROUND

Plaintiff Ronald Bernard Washington ("Washington") owns Paradise Funeral Homes, LLC, a company that provides funeral, burial and memorial services. On or about May 1, 2006, Plaintiff received notice from Detective Leonard A. Scoggins ("Scoggins") of the Caddo Parish Sheriff's office that Suhor Industries ("Suhor"), a business competitor of Plaintiff's, alleged that one of their tents had been stolen and was in Plaintiff's possession. [Amended Complaint, ¶ 7]. Detective Scoggins informed Plaintiff and his wife, Yumeaka Washington ("Mrs. Washington"), that the tent had been seized by the Sheriff's deputies at a burial service and had been delivered to Suhor. Id. at ¶ 9. Plaintiff denied the allegations and claimed he was the true owner of the tent. Id. at ¶ 15.

On or about May 11, 2006, Detective Scoggins told Plaintiff's wife that an arrest warrant was being issued for the arrest of Plaintiff for illegal possession of stolen things.

Id. at ¶ 16.  Plaintiff was able to have the execution of the arrest warrant stayed for one week to give him the opportunity to submit photographic evidence tending to prove he had purchased, possessed, and used the tent many months prior to the date of the alleged theft.  Id. at ¶ 17.  One week later, Plaintiff met with Detective Scoggins and other employees of the Caddo Parish Sheriff's office to look at photographs and video recordings of events held prior to the date of the alleged theft at which Plaintiff claimed he used the tent.  Id. at ¶ 20.  After the examination, Detective Scoggins prepared a supplemental report and submitted it to the prosecuting attorney.  Id. at ¶ 25-26.  The next day, the prosecuting attorney made the decision to press charges and pursue prosecution.  Id. at ¶ 26.

On July 10, 2006, a Bill of Information was filed against Plaintiff charging him with Illegal Possession of Stolen Things in the First Judicial District, Parish of Caddo, State of Louisiana.  Id. at ¶ 30.  Plaintiff obtained counsel to represent him in his defense against the criminal charges, and the charges were ultimately dismissed.  Id. at ¶¶ 31-35.

On August 14, 2008, Plaintiff filed a Complaint against Caddo Parish Sheriff Steve Prator and Detective Scoggins alleging that he had been "substantially damaged by the reckless and careless manner in which Defendants maliciously prosecuted Plaintiff." [Complaint, ¶ 33].  Thereafter, Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff's claims related to his arrest are time-barred.  Even if timely, Defendants' assert that Plaintiff failed to sufficiently state a claim for malicious prosecution and failed to plead facts with sufficient particularity to overcome Detective Scoggins' qualified immunity.  [Record Document 7].  After receiving

Defendants' motion, Plaintiff filed an Amended Complaint and an opposition to Defendants' Motion to Dismiss. [Record Documents. 11-12].

The Court ruled that "Plaintiff may proceed under 42 U.S.C. § 1983 only upon the ground that Detective Scoggins' violated his Fourteenth Amendment right to due process." [Record Document 13 at 6]. The Court also held that Plaintiff may pursue a state law claim for malicious prosecution and a "claim against Caddo Parish Sheriff Steve Prator." [Record Document 13 at 7]

## LAW AND ANALYSIS

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made, however, Rule 56 requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While

the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

### A.	Qualified Immunity Standard

"Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 322 (5th Cir.2002) (citing Bazan ex rel. Bazan v. Hidalgo Cnty., 246 F.3d 481, 489 (5th Cir.2001)). This burden cannot be discharged by conclusory allegations and assertions. Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir.2005).

Evaluating a claim of qualified immunity involves two inquiries: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct. Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part by Pearson, --- U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d 565. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Wernecke v. Garcia, 591 F.3d 386, 392 (5th Cir.2009)(citations omitted). A defendant will not be immune if, on an objective basis, it is

obvious that no reasonably competent officer would have concluded that the defendant's actions were lawful; but if officers of reasonable competence could disagree on the issue, immunity should be recognized. Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). It is within the discretion of the district court to decide which of the two prongs of the qualified immunity analysis to address first in light of the circumstances of each case. Pearson, 129 S.Ct. at 818.

The qualified immunity shield is broad and protects actions, even mistakes, that are reasonable under the existing law. See Fraire v. City of Arlington, 957 F.2d 1268 (5th Cir.1992). The question of whether an official's conduct was objectively reasonable is a question of law to be decided by the Court. Evett v. DETNTFF, 330 F.3d 681, 688 (5th Cir.2003), citing Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir.1994). Once the government official pleads qualified immunity as an affirmative defense, the burden then shifts to the plaintiff. Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir.2005). The plaintiff has the burden of establishing a violation of a clearly established right and that the government official's conduct was objectively unreasonable in light of the clearly established law at the time of the violations. Id.

**B.      42 U.S.C. § 1983–Fourteenth Amendment Right to Due Process[1]**

"Today we examine our uncertain law attending a claim of malicious prosecution with its undisciplined mix of constitutional and state tort law. We decide that 'malicious

---

[1] The Plaintiff alleged a "class of one" theory in a Second Amended Complaint as a basis for liability. See Record Document 12-1. However, this document (12-1) was never made a part of the record because leave was not sought to file the Second Amended Complaint. As such, this Court cannot consider the allegations and claims contained in the Second Amended Complaint because it is not before the Court.

prosecution' standing alone is no violation of the United States Constitution, and that to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law." Castellano v. Fragozo, 352 F.3d 939, 942 (5th Cir. 2003). 42 U.S.C. § 1983 imposes liability upon any person who, acting under color of state law, deprives another of federally protected rights. 42 U.S.C. § 1983. Section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the laws of the United States. White v. Thomas, 660 F.2d 680, 683 (5th Cir.1981). A plaintiff cannot succeed on a § 1983 claim merely by showing any deprivation of his rights; § 1983 was intended to preserve rights protected by federal law. Wright v. Collins, 766 F.2d 841, 849 (5th Cir.1985).

In the Fifth Circuit, a claim of "malicious prosecution" without more is not sufficient to allege a violation of the United States Constitution. Castellano v. Fragozo, 352 F.3d 939, 942 (5th Cir. 2003). To proceed under 42 U.S.C. § 1983, such a claim must rest upon a denial of rights secured under federal and not state law. Id. However, it is well established that the suppression "of evidence favorable to an accused upon request violates due process when evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." See Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-96, 10 L.Ed.2d 215 (1963). In his Amended Complaint, Plaintiff specifically alleged that Detective Scoggins violated his Fourteenth Amendment right to procedural due process "by concealing exculpatory and impeachment evidence from the prosecutor." [Amended Complaint, ¶ 45].

Under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the government must disclose material, exculpatory evidence to a criminal defendant. United

States v. Walters, 351 F.3d 159, 169 (5th Cir.2003) (citing Brady, 373 U.S. at 87). "A valid Brady complaint contains three elements: (1) the prosecution must suppress or withhold evidence, (2) which is favorable, and (3) material to the defense." United States v. Lanford, 838 F.2d 1351, 1355 (5th Cir.1988) (quoting United States v. Auten, 632 F.2d 478, 481 (5th Cir.1980)). Impeachment as well as exculpatory evidence fall within Brady's purview. United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

"Evidence is not 'suppressed' if the defendant 'knows or should know of the essential facts that would enable him to take advantage of it.'" United States v. Runyan, 290 F.3d 223, 246 (5th Cir.2002) (citing United States v. Shoher, 555 F.Supp. 346, 352 (S.D.N.Y.1983)); see also United States v. Brown, 628 F.2d 471, 473 (5th Cir.1980) ("[W]hen information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no Brady claim."). With respect to "materiality," "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682. "The materiality of Brady material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state." Smith v. Black, 904 F.2d 950, 967 (5th Cir.1990), vacated, 503 U.S. 930, 112 S.Ct. 1463, 117 L.Ed.2d 609 (1992), abrogated on other grounds, Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992).

    **i.    Detective Scoggins**

"Plaintiff contends the Defendant violated his right to procedural due process, in violation of the Fourteenth Amendment to the United States Constitution, by wilfully concealing exonerating evidence from the prosecutor." [Record Document 33 at 18]. Review of the briefs and statements of fact reveal that Plaintiff admits that "[t]he videotape [received from Mrs. Washington] was placed into evidence, but was also provided by Ronald Washington to the District Attorney through his counsel." [Record Document 29-1 at 6].

This Court has reviewed the record and cannot find a due process violation as alleged by the Plaintiff. The record makes clear and the Plaintiff does not dispute that shortly after Mrs. Washington showed the allegedly exculpatory videotape and still photographs to Detective Scoggins, this evidence was booked into evidence in accordance with standard procedure and made available to the District Attorney. Furthermore, in this instance the alleged <u>Brady</u> material was already in the possession of the Plaintiff all along, after all Plaintiff provided it to the investigating detective. The theory advanced by the Plaintiff does not fit within the rubric of suppression of exculpatory evidence; the evidence at issue was never withheld from the District Attorney.

The Plaintiff appears to realize this but nevertheless seeks to impose an additional duty on Detective Scoggins. Namely, Plaintiff argues that, in addition to booking the videotape and still photographs into evidence, Detective Scoggins had a duty to prepare an additional supplemental report[2] analyzing the alleged exculpatory evidence. The

---

[2]From this Court's review of the records submitted, Detective Scoggins prepared approximately five supplemental reports during the course of his investigation. <u>See</u> Record

Plaintiff contends that "Scoggins' refusal to write a supplemental report about the walk-through inspection of the tent with Mrs. Washington and his wilful[l] indifference to the tangible exonerating evidence she provided constitute, at the very least, a deliberate manipulation of the prosecutorial process and a violation of Washington's right to due process." [Record Document 33 at 18]. However, the Plaintiff has been unable to provide this Court with any jurisprudence imposing such a duty on a police officer to do more than make the evidence available to the District Attorney. This Court finds that this set of facts does not justify the creation of any such additional legal duty.

This Court finds that there is a genuine dispute of material fact as to whether or not Detective Scoggins actually prepared an additional supplemental report after the walk-through and after viewing the videotape and still photographs provided by Mrs. Washington. However, this determination does not prevent this Court from disposing of this matter. Assuming that Detective Scoggins failed to submit a supplemental report, such failure amounts to no more than ordinary negligence.

The Supreme Court of the United States has concluded "that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." Daniels v. Williams, 474 U.S. 327, 328 (1986). The Fifth Circuit recently reaffirmed this stance when they held "[l]iability for an action pursuant to §1983 must be based on constitutional violations, *not* mere negligence." Widner v. Aguilar, 2010 WL 4269222, *1 (5th Cir. 2010). While both of these cases spring out of alleged excessive force against prisoners, they are still firmly rooted in the Due Process

---

Document 22-3.

Clause. The Court agrees with this analysis. Mere negligence is legally insufficient to support a §1983 claim.

This Court finds that as a matter of law Detective Scoggins is entitled to summary judgment because the Plaintiff has failed to make a showing that Detective Scoggins violated a constitutionally protected right; therefore, Detective Scoggins is entitled to qualified immunity.

### C.    Claims Against Caddo Parish Sheriff Steve Prator

In the Plaintiff's Response to Statement of Uncontested Facts and Statement of Contested Material Facts, they concede that "Plaintiff will not pursue a Monel[l] claim against the Caddo Parish Sheriff." [Record Document 291- at 7].

As such, there are no genuine disputes of material fact and summary judgment is appropriate on this claim.

### D.    State Law Claim–Malicious Prosecution

To prevail on a malicious prosecution claim under Louisiana law, the plaintiff must prove: (1) the commencement or continuance of an original criminal or civil judicial proceeding, (2) its legal causation by the present defendant against the plaintiff who was the defendant in the original proceeding, (3) a bona fide termination in favor of the present plaintiff, (4) the absence of probable cause for such proceeding, (5) the presence of malice therein, and (6) damage. Craig v. Carter, 30,625 (La.App. 2 Cir. 09/23/98), 718 So.2d 1068, 1070 (citing Goodman v. Spillers, 28,933 (La.App. 2 Cir. 12/23/96), 686 So.2d 160, writs denied, 97-0225, 07-0423 (La. 03/27/97), 692 So.2d 393, 400).

In the Amended Complaint, Plaintiff alleges Detective Scoggins intentionally concealed exculpatory and impeachment evidence from the prosecutor for the purpose of

commencing and maintaining criminal prosecution against him; that, but for Detective Scoggins's conduct, the criminal charges would have been dismissed and the prosecution concluded either before he was booked, or shortly thereafter; that the charges were ultimately dismissed and the criminal record expunged; and that as a result of Detective Scoggins' conduct, he suffered humiliation, emotional distress, and financial loss. [Amended Complaint, ¶¶ 55-62].

From this Court's review of the record, it appears that the only elements of the state law tort of malicious prosecution that are in dispute are elements four and five: "(4) the absence of probable cause for such proceeding, (5) the presence of malice therein . . . ." Craig v. Carter, 30,625 (La.App. 2 Cir. 09/23/98), 718 So.2d 1068, 1070.

### i. Probable Cause

According to the Louisiana Supreme Court:

> [N]o police officer should fear that doing his duty in good faith will subject him to liability. An officer satisfies his duty of good faith in making an arrest if the arrest is based on probable cause. Probable cause exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Miller v. East Baton Rouge Parish Sheriff's Dep't, 511 So.2d 446, 452-53 (La.1987); State v. Wilson, 467 So.2d 503 (La.1985).
>    The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence required at trial, and credibility determinations are seldom crucial in deciding whether available evidence supports a reasonable belief that the person to be arrested has committed a crime. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); State v. Rodrigue, 437 So.2d 830 (La.1983); State v. Simms, 571 So.2d 145, 148 (La.1990). Probable cause, as the very name

> implies, deals with probabilities. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Simms, 571 So.2d at 148. The probable cause standard recognizes that a degree of uncertainty may exist and that an officer need not have sufficient proof to convict but must have more than a mere suspicion. State v. Guidry, 388 So.2d 797 (La.1980); State v. Lehnen, 403 So.2d 683, 687 (La.1981); State v. Herbert, 351 So.2d 434 (La.1977). The facts need not eliminate all possible innocent explanations in order to support a finding of probable cause. Lehnen, 403 So.2d at 687; State v. Phillips, 347 So.2d 206 (La.1977).

Gibson v. State, 758 So.2d 782, 788-89 (La. 2000).

According to the "Affidavit for Arrest Warrant" of Ronald Washington, in the section that lays out the probable cause for arrest, Detective Scoggins recites the statements of two employees of Suhor who positively identified a tent at Lake Bethlehem Cemetery as the same tent that was stolen from their company on October 14, 2005. (Record Document 22-8 at 3). The affidavit shows a thorough investigation. Plaintiff argues "[i]f there was any probable cause in the first place, a trier of fact could conclude that it was sufficiently eroded by the evidence Mrs. Washington presented to deter prosecution." [Record Document 33 at 13]. Plaintiff even presents an affidavit from Walter May ("May"), the District Attorney in Jackson Parish (not Caddo Parish where the prosecution took place), in which he states "I obtained information regarding the basis of the arrest from the arrest warrant. It was my opinion, based on my experience as a district attorney, that the information stated in the warrant was insufficient to support prosecution."[3] [Record Document 29-2 at 1]. May's statement does not address probable cause, only whether the information supported

---

[3]This Court has reviewed the jurisprudence in the Fifth Circuit and has been unable to find any cases where a District Attorney from a neighboring jurisdiction filed an affidavit opining the sufficiency of the evidence for prosecution. In this context, May's affidavit is of little or not value.

prosecution.[4]  As the jurisprudence demonstrates, there is no hard and fast rule for determining probable cause.  It is an exercise in probabilities.  It did not require Detective Scoggins to resolve the alleged contradictions posed by the Suhor employees who positively identified the tent and the videotape, and Mrs. Washington's still photographs that purported to establish that the Plaintiff owned the tent prior to October 2005.  This Court thus discounts Walter May's affidavit.  In addition, District Attorneys in Louisiana have far-reaching discretion in choosing which cases will be prosecuted.  See LA.C.CR.P. arts. 61 and 62.  An unsupported conclusion by one Louisiana District Attorney that a case did not warrant prosecution, in his opinion, is of little or no use in this Court's analysis in determining probable cause.  Given the evidence available to Detective Scoggins, this Court finds that he had sufficient probable cause to sustain the *arrest* of the Plaintiff.  Because this Court has found probable cause, Plaintiff's claim for malicious prosecution must fail.

    **ii.    Malice**

However, in an abundance of caution, this Court will also review the element of malice.  The Louisiana Supreme Court has likewise spoken to the element of malice:

> Second of importance in actions of malicious prosecution is the element of defendant's malice. However, malice does not submit readily to definition. GREEN, JUDGE AND JURY 347 (1930); Griswold v. Horne, 19 Ariz. 56, 165 P. 318 (1917). See 54 C.J.S. Malicious Prosecution § 41 (1948); Sanders v. Daniel Intern. Corp., 682 S.W.2d 803 (Mo.1984). It means something more than the fictitious "malice in law" which has been developed in defamation cases as a cloak for strict liability. There must be malice in fact. PROSSER & KEETON, at p. 882.

---

[4] In addition, this bald assertion is a conclusion of law which is the exclusive province of this Court.

> Any feeling of hatred, animosity, or ill will toward the plaintiff, of course, amounts to malice. HARPER, JAMES AND GRAY § 4.6 at p. 443. See Barrios v. Yoars, 184 So. 212 (Orl.App.1938); Girot v. Graham, 41 La.Ann. 511, 6 So. 815 (1889). But it is not essential to prove such ill will. Malice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to "tie up the mouths" of witnesses in another action, or as an experiment to discover who might have committed the crime. PROSSER & KEETON, at p. 883; HARPER, JAMES AND GRAY, § 4.6 at p. 445 n. 8. See Jones v. Soileau, supra; Hibernia Nat. Bank v. Bolleter, supra; Johnson v. Ebberts, 11 F. 129 (C.C.Or.1880); Glover v. Fleming, 36 Md.App. 381, 373 A.2d 981 (1977). Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights. Jones v. Soileau, supra; Hibernia Nat. Bank v. Bolleter, supra; Johnson v. Pearce, supra; Brown v. United States, 653 F.2d 196 (5th Cir.1981), cert. den. 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982). See Spencer v. Burglass, 337 So.2d 596 (La.App. 4th Cir.1976); Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2d Cir.1975). Since the determination of malice in a malicious prosecution case is a question of fact, the issue is to be determined by the trier of fact unless only one conclusion may reasonably be drawn from the evidence. PROSSER & KEETON, at p. 883 n. 74, 75; GREEN, at p. 347-48; HARPER & JAMES, § 4.6 at p. 446-49.

Miller v. East Baton Rouge Parish Sheriff's Dept., 511 So. 2d 446, 453 (La. 1987).

Typically this is a determination left to the jury, but in this instance, the evidentiary showing by Plaintiff fails to rise to the level of malice on the part of Detective Scoggins. Plaintiff has attempted to manufacture ill-will on the part of Detective Scoggins, but even assuming the truth of these allegations, they do not rise to the level of malice contemplated by this particular assumed tort. Without malice, Plaintiff cannot sustain a claim for malicious prosecution.

There are no genuine disputes of material fact as to the existence of probable cause to sustain the arrest of the Plaintiff and as to the lack of malice on the part of Detective Scoggins. As such, Detective Scoggins is entitled to summary judgment on Plaintiff's state law claim for malicious prosecution.

## CONCLUSION

After careful consideration of the briefs and exhibits filed, the Court finds there are no genuine disputes of material fact regarding the actions of Detective Leonard A. Scoggins as it relates to the investigation and arrest of Ronald Washington. Finding the Detective's actions were objectively reasonable under the circumstances, and that Plaintiff has failed to establish a constitutional violation for which Defendants may be held liable under section 1983, Defendants' motion for summary judgment [Record Document 22] shall be **GRANTED** and Plaintiff's claims shall be **DISMISSED WITH PREJUDICE**.

A Judgment consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 21st day of January, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE